UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| CHRISTOPHER GRAY YOUNG, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 1:23-CV-00273-JRG-SKL |
| CHRISTIAN LOPEZ, CEVIN YORK, TOMMY MAYNARD, BRANDON BARNES, JACKIE MATHENY JR., JANICE CORNETT, KELLWELL FOOD MANAGEMENT, WARREN COUNTY, and DAVID RODRIGUEZ, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, an inmate in the Warren County Jail, has filed (1) a pro se complaint for violation of 42 U.S.C. § 1983 arising out of incidents during his confinement [Doc. 2]; (2) an "amendment" setting forth additional information about his claims [Doc. 2-1]; and (3) a motion for leave to proceed *in forma pauperis* [Doc. 1]. The Court will address the motion for leave to proceed *in forma pauperis* [*Id.*] before screening the complaint and amendment [Docs. 2, 2-1].

I. **MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS***

As it appears from his motion for leave to proceed *in forma pauperis* [Doc. 1] that Plaintiff is unable to pay the filing fee in one lump sum, this motion is **GRANTED**.

Plaintiff is **ASSESSED** the civil filing fee of $350.00. 28 U.S.C. § 1914(a). The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 900 Georgia Avenue, Chattanooga, Tennessee 37402, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to his inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-

month period preceding the filing of the complaint. 28 U.S.C. § 1915(b) (1) (A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account is directed to submit twenty percent (20%) of his preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk is **DIRECTED** to send a copy of this order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's facility to ensure compliance with the Prison Litigation Reform Act ("PLRA") requirements for payment of the filing fee.

## II.     COMPLAINT SCREENING

### A.     Standard

Under the PLRA, district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive a PLRA initial review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570. However,

courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

### B. Allegations

Plaintiff divides the substantive allegations of his complaint into two separate incidents [Doc. 2 at 11–15]. The Court will summarize Plaintiff's relevant factual allegations about these incidents in turn.

In the first incident, Plaintiff claims that an inmate who was "under the supervision of Janice Cornett who works for Kellwell Food Management" defecated on the floor of a "cooler/freezer" [Doc. 2 at 12]. But jail officials did not discard all the food from the cooler/freezer and served some of that food to inmates, which Plaintiff claims risked inmates' health [*Id.*]. Plaintiff then refers to "acts of omissions, denial of equal protection[,] and constitutional violation of official misconduct in retaliation against the First Amendment" and states that he seeks to hold various Defendants in their official and individual capacities for their failure to investigate this incident and failure to dispose of all the food [*Id.* at 12–13]. Plaintiff also asserts that this incident violated the Eighth Amendment's prohibition on cruel and unusual punishment and posed a "health risk to inmates" [*Id.* at 11].

In the "amendment" filed with the complaint, Plaintiff further complains that jail officials did not have the food from the cooler/freezer professionally tested to ensure it was not contaminated [Doc. 2-1 at1]. Plaintiff also states that "two inmates who would like to remain unknown" have told him that, when they used to work in the jail kitchen, the kitchen had a roach infestation [*Id.*]. He then asserts that ants, maggots, and mold have been in the tray area [*Id.*].

3

In the second incident, Plaintiff states that after an inmate "[s]upposedly . . . over[]dosed on drugs," jail officials moved certain inmates to the recreation yard to search their pod [Doc. 2 at 13]. When jail officials brought the inmates back inside after this search, "several inmates noticed some of their property was missing" [*Id.*]. Unspecified inmates confronted Defendant Lopez about the missing property, and Defendant Lopez stated that other cells also were missing property, and that he guessed they were "all missing something" [*Id.*]. Plaintiff claims that Defendant Lopez's failure to investigate this incident caused him to lose property and violated his Eighth Amendment rights [*Id.* at 13–14]. Plaintiff additionally claims that this incident caused him to be "confined to his cell for 75 hours . . . without being able to shower, exercise[,] or use the phones" [*Id.* at 14]. According to Plaintiff, "[t]he pod search yielded no illegal drugs or foul play," and jail officials never proved that drugs caused the inmate health issue that led to that search [*Id.*]. Nevertheless, since then, inmates have been segregated and locked down twenty-three hours a day without any explanation, write ups, or disciplinary forms [*Id.*]. Plaintiff claims that these incidents violate his Eighth Amendment and due process rights "as a federal inmate on active federal probation [who] was just in federal prison," and that Defendant Matheny is responsible for these occurrences due to his failure to supervise Defendant Lopez [*Id.* at 14]. Plaintiff additionally asserts that Defendant Lopez also took inmates' legal tablet in this incident, and that this has caused him "severe stress, anxiety, and emotional damages, and deprived [him] of crucial time to research his case(s)" as he had a critical court date on November 8, 2023 [*Id.* at 15].

In the amendment to his complaint, Plaintiff also states that, during the lockdown that began on the day that jail officials thought an inmate overdosed, the "'C' shift" jail officials, whom Defendant David Rodriguez supervises, did not allow inmates to clean their cells or pod or do any laundry "whenever they were working" [Doc. 2-1 at 1].

Plaintiff has sued Christian Lopez, Cevin York, Tommy Maynard, Brandon Barnes, Jackie Mathney Jr., Janice Cornett, Kellwell Food Management, Warren County, and David Rodriguez [*Id.* at 3–5]. While Plaintiff first states that he has sued all Defendants only in their official capacities [*Id.* at 6–8], he later states he sues the Defendants involved in the cooler/freezer incident in both their individual and official capacities [*Id.* at 12–13]. As relief, Plaintiff initially requests "$5,000,000.00" dollars for his pain and suffering and deprivation of his constitutional rights and for Warren County Jail conditions "to improve . . . and . . . [come] up to code per federal and state law, and for proper living conditions for other inmates" in the jail [*Id.* at 16]. But in his amendment, Plaintiff states that he instead seeks "$15,000,000.00" and requests that "the CDC and FDA" come to test the kitchen for insects and insect feces [Doc. 2-1 at 1].

C. Analysis

For the reasons set forth below, the complaint fails to state a claim upon which relief may be granted under § 1983.

1. **Warren County, Kellwell Food Management, and Official Capacity Claims**

As set forth above, Plaintiff has sued Defendants Kellwell Food Management and Warren County, and he also sues all individual Defendants in their official capacities [Doc. 2 at 6–8]. Plaintiff's official capacity claims against individual Defendants are actually against the individual Defendants' employer(s), which appear to be Warren County and/or Kellwell Food Management, whom Plaintiff also sued separately [*Id.* at 2]. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an

5

entity of which an officer is an agent."). Thus, the Court evaluates Plaintiff's official capacities claim as additional claims against Defendants Warren County and Kellwell Food Management.

For Plaintiff to state a claim upon which relief may be granted under § 1983 as to Defendants Warren County and Kellwell Food Management, he must plausibly allege that a custom or policy of these entities caused a violation of his constitutional rights. *See Monell.*, 436 U.S. at 708 (Powell, J., concurring) (explaining a municipality can only be held liable for a constitutional violation when the violation resulted from "implementation of [the municipality's] official policies or established customs"); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (holding that a private corporation acting under color of state law may not be liable under § 1983 for constitutional violations based upon a theory of *respondeat superior* but rather may be liable only where its custom or policy caused a constitutional violation) (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1129–30 (11th Cir. 1992) (citing *Monell*, 436 U.S. at 691)).

Plaintiff has not set forth any facts from which the Court can plausibly infer that that a custom or policy of Defendants Warren County or Kellwell Food Management caused any violation of his constitutional rights. Accordingly, the complaint fails to state a claim upon which relief may be granted as to these Defendants and the individual Defendants in their official capacities, and these Defendants and official capacity claims are **DISMISSED**.

As Plaintiff also indicates that he sues various individual Defendants in their individual capacities for the cooler/freezer incident, however, and due to the nature of Plaintiff's allegations, the Court will now screen the substance of Plaintiff's remaining claims as though Plaintiff had sued the individual Defendants in their individual capacities for all of his claims. For the reasons set forth below, Plaintiff's complaint also fails to state a claim upon which relief may be granted under § 1983 against any Defendant in his or her individual capacity.

6

### 2. Kitchen Claims

As set forth above, in the first incident Plaintiff sets forth in his complaint, he asserts that, after an inmate defecated in a cooler/freezer, jail officials did not throw away all the food in that cooler/freezer and instead fed some of it to inmates, which he claims violated the Eighth Amendment and risked inmates' health [*Id.* at 11–12]. Plaintiff then claims that Defendants Sheriff Matheny, Lopez, and Kellwell Food Management, as well as other unnamed jail officials, failed to properly investigate this incident [*Id.* at 12–13]. Plaintiff also generally refers to equal protection, official misconduct, and retaliation in describing this incident [*Id.* at 12]. Additionally, in his amendment, Plaintiff claims that the jail kitchen has had ants, maggots, mold, and an infestation of roaches [Doc. 2-1 at 1]. For the reasons set forth below, none of these allegations state a claim upon which relief may be granted under § 1983, and they are **DISMISSED**.

#### a. Cooler/Freezer Incident

First, even if the Court assumes that jail officials served Plaintiff food from the cooler/freezer in which an inmate defecated, he provides no facts from which the Court can plausibly infer that this was a violation of his constitutional rights. It is well-settled that prison officials must take reasonable measures to protect prisoners' safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). Liability attaches to a prison official's failure to protect a prisoner where the prisoner was "incarcerated under conditions posing a substantial risk of serious harm," and the prison official acted with deliberate indifference to the prisoner's safety. *Id*. at 834. "Deliberate indifference" means that a prison official is liable only where he knows that the inmate faces a substantial risk of serious harm and disregards that risk. *Id*. at 837 (quotation marks omitted).

Plaintiff does not plausibly allege that any Defendant deliberately disregarded information suggesting that the food that was in the cooler/freezer when the inmate defecated, and that jail

7

officials served to inmates, came into any contact with feces. And the Court cannot plausibly infer any substantial risk of harm to Plaintiff from the fact that jail officials served him food products that were housed in the same room where an inmate defecated. Accordingly, this claim is purely speculative, and it fails to state a plausible claim for violation of Plaintiff's constitutional rights.

Additionally, while Plaintiff claims that various Defendants failed to properly investigate this incident and refers generally to equal protection, official misconduct, and retaliation, he fails to provide any facts from which the Court can plausibly infer that any Defendant violated his § 1983 rights based on these conclusory claim references, as set forth more fully below.

First, Plaintiff did not have a constitutional right to a proper investigation of the cooler/freezer incident. *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation." (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973))); *Frodge v. City of Newport*, 501 F. App'x 519, 532 (6th Cir. 2012) (providing that a "failure to act . . . do[es] not constitute 'active constitutional behavior' as required [to violate § 1983] and thus, [is] not actionable" under § 1983 (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999))).

Next, Plaintiff does not set forth any facts to support a plausible inference that any Defendant violated his right to equal protection based on the cooler/freezer incident. *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (finding that a complaint failed to state an Equal Protection claim where it did not "make a plausible allegation that similarly situated organizations and individuals, of a different political viewpoint, have not been subject to the same alleged treatment by Defendants.").

8

Similarly, Plaintiff's general reference to "official misconduct" does not allow the Court to plausibly infer a violation of his constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (formulaic recitations of a claim are insufficient to plausibly state a claim for relief).

Likewise, Plaintiff does not set forth any facts from which the Court can plausibly infer that any Defendant took action against him for his protected conduct in this incident, as required to state a plausible § 1983 retaliation claim. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (providing that a § 1983 retaliation claim has three elements (1) "the plaintiff engaged in protected conduct"; (2) the defendant took a sufficiently serious adverse action that would deter a prisoner of "ordinary firmness" from continuing to engage in the protected conduct against the plaintiff; and (3) protected conduct motivated the adverse action at least in part).

### b. Insects and Mold

Moreover, Plaintiff's allegations that (1) two anonymous inmates who used to work in the kitchen during an unspecified time period have told him about roaches in the kitchen area and (2) the tray area of the kitchen has had ants, maggots, and mold also fail to state a claim for violation of § 1983. Specifically, Plaintiff does not provide any facts that would allow the Court to plausibly infer that these insects or mold were present during Plaintiff's time in the jail, that any named Defendant caused or knew about the insects or mold, or that these conditions harmed him.

### 3. Pod Search

The second incident in the complaint arises out of a pod search due to a suspected inmate overdose. Plaintiff claims that this search resulted in (1) loss of property for him and others, which Defendant Lopez did not investigate; (2) him being confined to his cell without a shower, exercise, or phone access for seventy-five hours; (3) the pod being segregated and locked down twenty-three hours a day; and (4) loss of the inmates' legal tablet. Plaintiff also asserts that Defendant

9

Lopez's failure to investigate this incident caused him to lose property and violated both his Eighth Amendment rights and his right to due process, and that Defendant Matheny is responsible for these incidents due to his failure to supervise Defendant Lopez. For the reasons set forth below, these allegations do not state a plausible claim for violation of § 1983, and they are **DISMISSED**.

### a. Missing Property

Plaintiff's allegation that he was missing property after jail officials searched his cell does not state a plausible § 1983 claim against any named Defendant for various reasons, including most notably that Plaintiff does not allege that any named Defendant was personally involved in taking his property. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim). Additionally, Defendant Lopez's alleged failure to investigate Plaintiff's loss of property does not rise to the level of a constitutional violation. *Mitchell*, 487 F.3d at 378; *Frodge*, 501 F. App'x at 532.

### b. Denial of Shower, Recreation, and Phone for Seventy-Five Hours

Plaintiff's assertions that he was unable to shower, have recreation, or access the phone for seventy-five hours after the pod search fail to rise to the level of a constitutional violation.

Specifically, Plaintiff does not set forth any facts to support a plausible inference that these temporary limitations subjected him to an extreme deprivation of a life necessity in violation of his Eighth Amendment rights. *Hudson v. McMillan*, 503 U.S. 1, 8–9 (1992) (providing that allegations of "extreme deprivations" that deny a prisoner "'the minimal civilized measure of life's necessities" support a cognizable Eighth Amendment conditions-of-confinement claim (citations and quotations omitted)); *Richmond v Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (noting that

10

the Sixth Circuit "has concluded that deprivation of a shower and other personal hygiene items for a 'brief span of time . . . , i.e. only six days, is not actionable conduct." (quoting *Siller v. Dean*, 205 F.3d 1341 (6th Cir. Feb. 1, 2000))); *Thornton v. Sevier Cnty. Jail*, No. 3:23-CV-191-CLC-JEM, 2023 WL 4707133, at *5 (E.D. Tenn. July 24, 2023) (finding that "[a]n occasional three-day deprivation of showers, clean clothes, and recreation does not deprive an inmate of 'the minimal civilized measure of life's necessities'" (citation omitted)).

Also, Plaintiff's allegation that he was unable to use the phone for seventy-five hours fails to allege a violation of his First Amendment rights. *United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000) ("Prisoners have no per se constitutional right to use a telephone"); *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994) ("While prisoners retain the right to communicate with friends, family, and counsel while in prison, they do not have a right to unlimited telephone calls.").

### c. Segregation and Lockdowns

Plaintiff's allegations regarding his pod being subjected to segregation and lockdowns after the pod search, during which he was unable to clean his cell or pod or do laundry "whenever 'C' shift was working," also fail to state a claim upon which relief may be granted under § 1983.

First, to the extent that Plaintiff seeks to assert an Eighth Amendment claim arising out of these allegations, he has again failed to set forth any facts to support a plausible inference that these segregations and/or lockdowns subjected him to an extreme deprivation of a life necessity in violation of his Eighth Amendment rights. *Hudson*, 503 U.S. at 8–9.

These allegations likewise do not state a plausible due process claim. Specifically, a due process claim requires the existence of a protected liberty or property interest with which Defendants interfered. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or

11

property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."). But Plaintiff does not have a liberty interest "in avoiding transfer to more adverse conditions of confinement." *Id.* (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). Moreover, the Sixth Circuit has stated that "administrative segregations have repeatedly been held not to involve an 'atypical and significant' hardship implicating a protected liberty interest." *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (finding that an inmate "could not after *Sandin*, argue that placement in administrative segregation is an 'atypical and significant hardship'"); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995) (finding that mere "placement in administrative segregation was not an atypical and significant hardship, as intended by *Sandin*"). However, "a liberty interest in avoiding particular conditions of confinement may arise" where that confinement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 222–23 (citing *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995)).

Plaintiff has not set forth any facts from which the Court can plausibly infer that his segregation and/or lockdowns imposed an atypical or significant hardship. While Plaintiff claims that inmates were unable to do laundry or clean their cells or pod when one shift of jail workers was working, it is apparent from Plaintiff's complaint that the jail had multiple shifts of jail workers, and Plaintiff does not set forth any facts suggesting that the alleged denial of laundry and cleaning products by one shift of jail workers created conditions that rose to the level of a due process violation.

### d. Legal Tablet

Plaintiff also alleges that Defendant Lopez took away inmates' legal tablet after the pod search, and that this occurred during a key stage of his case. However, as Plaintiff does not suggest

12

that this denial of the legal tablet has prejudiced him in any way, his lack of access to this tablet fails to rise to the level of a constitutional violation. *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (holding that a plaintiff must plead and prove that his meritorious claims have been prejudiced by the alleged denial of adequate legal resources to state a claim for denial of access to courts (citing *Lewis v. Casey*, 518 U.S. 343 (1996)).

### e. Failure to Supervise

Plaintiff additionally claims that Defendant Matheny is liable under § 1983 for the incidents that followed the pod search due to his failure to supervise Defendant Lopez. However, for the reasons set forth above, Plaintiff has not plausibly alleged that Defendant Lopez violated his constitutional rights in the incidents that followed the pod search. Nor has Plaintiff set forth any facts to support a plausible inference that Defendant Matheny "authorized, approved[,] or knowingly acquiesced" in any violation of his constitutional rights, as required for Defendant Matheny to be liable for any such violation under § 1983. *Troutman v. Louisville Metro Dep't of Corrs.*, 979 F.3d 472, 487–88 (6th Cir. 2020) (providing that "at minimum a plaintiff must show that a supervisory official at least implicitly authorized, approved[,] or knowingly acquiesced in the unconstitutional conduct of the offending subordinate" in order for the supervisory official to be liable for a subordinate's acts under § 1983) (internal quotation marks and citations omitted).

Accordingly, Plaintiff's allegation that Defendant Matheny is liable for Defendant Lopez's actions fails to allege a plausible claim for violation of § 1983.

## IV. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

13

3. The custodian of Plaintiff's inmate trust accounts is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to provide a copy of this memorandum opinion and the accompanying judgment order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

5. Even liberally construing the complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983;

6. Accordingly, this action will be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

7. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE